## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOLLINGER SHIP YARDS LOCKPORT, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-545** |
| **NAIAD INFLATABLES OF NEWPORT, INC.** | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court is Defendant NAIAD Inflatables of Newport, Inc.'s ("NAIAD") Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay Proceedings.  (Rec. Doc. 8). Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

### I.      BACKGROUND

Plaintiff Bollinger Shipyards Lockport, LLC ("Bollinger") filed suit against NAIAD in the 17th Civil District Court for Parish of Lafourche.  Bollinger alleges that Bollinger had a contract with the United States Coast Guard to construct Fast Response Cutters, and in connection to that contract, Bollinger subcontracted with NAIAD to equip the cutters with twenty-one (21) feet rigid hill inflatable boats ("RHIB").  (Rec. Doc. 1-2 at 4).  The subcontract called for the construction of eighteen (18) RHIBs and two (2) spares for a total of twenty (20) vessels. (Rec. Doc. 1-2 at 4).  Bollinger claims that, in response to missed delivery dates, Bollinger and NAIAD reached a settlement agreement in November 2012, entitled "Settlement Agreement and Mutual Release" ("Disruption Agreement"), which called for Bollinger to make a one-time payment of $400,000 to NAIAD for the delay damages; a revised delivery schedule; and for Louisiana Law to govern disputes under the Disruption Agreement.  (Rec. Doc. 1-2 at 4).

Bollinger contends that although NAIAD was able to deliver the first eight vessels,  NAIAD continued to miss delivery deadlines, (Rec. Doc. 1-2 at 5).  Bollinger avers that it ultimately became evident that NAIAD would be unable to deliver the additional RHIBs.  (Rec. Doc. 1-2 at 5).  At this point, Bollinger contends it had made deposits for the additional twelve (12) vessels totaling $1,468,950.00.  (Rec. Doc. 1-2 at 5).  Bollinger claims that NAIAD refused to return the deposits, leading Bollinger to bring the present suit.  Bollinger brings its claims under the following theories of recovery: breach of contract; violations of Louisiana's Unfair Trade Practices and Consumer Protection Law, La R.S. § 51:1401, *et seq*.; and unjust enrichment. (Rec. Doc. 1-2 at 6-8).

NAIAD removed this case pursuant to this Court's diversity jurisdiction under 28 U.S.C. 1332.  (Rec. Doc. 1 at 3).  NAIAD denies the allegations and argues that the parties had contractually agreed to resolve the disputes by arbitration.  (Rec. Doc. 7 at 4).  NAIAD also pleads a variety of affirmative defenses, including impossibility of the performance under the contract and estoppel.  (Rec. Doc. 7 at 4).

## II.   PRESENT MOTION (Rec. Doc. 8)

NAIAD filed the present motion and asks this Court to compel arbitration and dismiss the case, or in the alternative, to stay the proceedings.  In support of its motion, NAIAD argues that the parties entered into a contract ("the Subcontract"), which requires that any dispute between the parties be referred to arbitration.  (Rec. Doc. 8-1 at 2).  Accordingly, NAIAD contends that the Court should refer the suit to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.A §§ 1 *et seq*.  NAIAD also argues that this Court should dismiss Bollinger's claims because all of the issues raised by Bollinger arise under the Subcontract and must therefore be

submitted to arbitration.  (Rec. Doc. 8-1 at 4).  NAIAD relies on *Alford v. Dean Witter Reynolds, Inc.*, a Fifth Circuit case, as support for this proposition.  (Rec. Doc. 8-1 at 3).

Bollinger opposes the motion and argues that the parties entered into a separate and binding agreement, the Disruption Agreement, which supersedes the Subcontract and does not contain an arbitration clause.  (Rec. Doc. 11 at 2).  Bollinger argues that it "alleges breach of this agreement and seeks remedies that were established by this agreement," including liquidated damages.  Finally, if the Court does compel arbitration, Bollinger contends that dismissal is not appropriate.  (Rec. Doc. 11 at 3).

NAIAD replies and argues that Bollinger asserts claims under both the Subcontract and the Disruption Agreement.  Specifically, NAIAD avers that paragraphs 6, 7, and 8 references the parties' obligations under the Subcontract and paragraph 9 references the liquidated damages clause in the Disruption Agreement.  (Rec. Doc. 18 at 3).  NAIAD notes that Bollinger's claims for breach of contract, unfair trade practices, and unjust enrichment cannot be exclusively traced to the Disruption Agreement but also arise under the Subcontract.  (Rec. Doc. 18 at 3).  While the terms of the arbitration clause may appear narrow, NAIAD avers that the clause is broad when read in the broader context of the Subcontract.  (Rec. Doc. 18 at 6).  NAIAD thus argues that the Court should construe the provision as broad, and the parties should arbitrate all disputes that bear a "significant relationship" to the Subcontract.  (Rec. Doc. 18 at 7).

NAIAD goes on to state "[w]here parties enter into multiple agreements with each other that are integral and related parts of one deal, an arbitration clause, especially a broad one in one of the agreements, may be found to cover disputes arising under a separate agreement that does not contain an arbitration agreement."  (Rec. Doc. 18 at 7) (citing *Trapp Chevrolet-Oldsmobile-Cadillac, Inc. v. General Motors Corp.*, No. 02-158, 2002 WL 1163611, at *9-*15 (E.D. La.

May 31, 2002) (Porteous, J.)).  Here, NAIAD argues that the Subcontract governed the entire transaction between the parties and the Disruption Agreement resolved a dispute that arose under the Subcontract.  (Rec. Doc. 18 at 8).  Further, NAIAD contends that the Subcontract called for such an agreement to resolve disputes and modify the Subcontract.  NAIAD avers that "Bollinger cannot validly argue that an agreement to resolve a dispute with NAIAD over additional costs of construction somehow supersedes the provisions of the [Federal Acquisition Regulation] and the requirements of the Subcontract."   (Rec. Doc. 18 at 10).

### III.    LAW AND ANALYSIS

### A.  Motion to Compel Arbitration

Section 2 of the FAA provides, in relevant part, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...."  9 U.S.C. § 2. There is a strong presumption in favor of arbitration for arbitrable disputes.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *Bhatia v. Johnson*, 818 F .2d 418, 421 (5th Cir.1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985)).  When considering a motion to compel arbitration under the FAA, the court's inquiry consists of three steps.  *See Mitsubishi Motors Corp,* 473 U.S. at 626; *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002).  First, the court must determine whether a valid agreement to arbitrate exists between the parties.  *Gaskamp*, 280 F.3d at 1073.  Next, it will examine "whether the dispute in question falls within the scope of that arbitration agreement." *Id.*  If the first two steps are answered affirmatively, the court must ultimately consider "whether 'any federal statute or policy renders the claims nonarbitrable.' " *Jones v. Halliburton Co.*, 583

F.3d 228, 234 (5th Cir.2009) (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir.2007)).

The parties concede that the Subcontract contained a valid arbitration clause but dispute whether the present suit falls within the scope of the arbitration clause or is subject to the Dispute Settlement that does not contain an arbitration clause.  The Subcontract's arbitration clause states: "Any dispute **arising under this agreement** that cannot be settled by the Parties under the Dispute Resolution procedures, shall be referred to arbitration under the Rules of the Society of Maritime Arbitrators, Inc."  Based on this language, the Court must determine whether the arbitration clause is "narrow" or "broad."  It is well established that "narrow" clauses include the language "arising out of the agreement," and "broad" clauses often contain the term "arising out of or in connection with this agreement."  *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067-68 (5th Cir. 1998).  A "narrow" clause only covers disputes that literally arise under the contract, whereas "broad" clauses encompass all disputes that "touch" the contract.  *See Id.*at 1168 ("With such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable.").  "[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration."  *Hornbeck*, 981 F.2d at 755 (quoting *Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 635 (5th Cir.1985)).  *See also Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996).  "Arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue." ' *Pennzoil*, 139 F.3d at 1067 (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990)).

Here, the arbitration clause includes the language "arising under the agreement," which would seemingly render the clause narrow.  However, the Fifth Circuit has instructed that the language of the arbitration clause should not be read in isolation, but rather in the context of the agreement and in a way that avoids an absurd result.  *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed. Appx. 188, 192 (5th Cir. 2009).  The arbitration clause states that "[a]ny dispute arising under the Agreement that cannot be settled by the parties **under the Dispute Resolution Procedures**…" (emphasis added).  The language of the section entitled "Dispute Resolution Procedures" states that "[a]ny disagreement, claim, or dispute between BOLLINGER and SELLER as to questions of fact or law **arising from or in connection with this Contract**."  (emphasis added).  Under Fifth Circuit precedent, "arising out of or in connection with this Contract" constitutes a broad arbitration clause.  Since the arbitration clause references that section and thereby incorporates that language, the Court finds that the clause is sufficiently broad.

Since the Court finds that the arbitration clause is broad, it is only necessary for the claims to "touch" the Subcontract for those claims to be subject to arbitration.  As the Fifth Circuit stated in *Pennzoil*, "[b]road arbitration clauses…are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  *Pennzoil*, 139 F.2d at 1067.  In that case, the Fifth Circuit conceded that the plaintiff's claim was based on a letter agreement that did not contain an arbitration provision and not the parties' Joint Operating Agreement, which contained a broad arbitration clause.  Nevertheless, the Fifth Circuit held that the claim was subject to the arbitration clause because it "related to" the Joint Operating Agreement.  *Id.*  The Fifth Circuit reached this conclusion and noted the "strong federal policy in

favor of arbitration" and the fact that the dispute "flow[ed] from a series of interrelated agreements." *Id.*

The Court reaches the same the conclusion here.  Bollinger's claims all arise out of NAIAD's failure to timely deliver the RHIBs, contractual duties outlined by the Subcontract. This is sufficient to find that the dispute is "related to" the Subcontract.  Furthermore, while the Disruption Agreement set forth new delivery dates and added a new liquidated damages clause, it did not supersede the Subcontract.  The Subcontract specifies that the parties should attempt to resolve any disagreement, and the Disruption Agreement constitutes such a resolution as it specifies that it is a settlement for the damages due to NAIAD caused by Bollinger's delay of twelve (12) of the Bollinger Purchase orders.  (Rec. Doc. 11-1 at 1).  Further, the referenced purchase orders were based on the Subcontract.  The Disruption Agreement is thus limited to settling the damages arising from that delay and positioned the parties to proceed with their contractual duties under the Subcontract with new delivery dates.  Bollinger's claims based on NAIAD's failure to meet the delivery dates of purchase orders, which the parties crafted under the Subcontract,  are thus "related to" the Subcontract and subject to the arbitration clause.

Even if the Court determined the clause was narrow, the Court would still conclude that the dispute arises under the Subcontract.  Bollinger's Petition demands liquidated damages as outlined in the Disruption Settlement, but the Petition also references other breaches of contract and sums that arise under the Subcontract.  (Rec. Doc. 1-2 at 6).  For instance, Bollinger claims that it is entitled to recover its deposits for the undelivered vessels in the amount of $1,468,950.00, but that sum does not reference the Disruption Settlement nor can it be found in the Disruption Settlement.  Based on these facts, and with the principle in mind that the Court

should err on the side of arbitration when the scope of the arbitration clause is debatable, it is evident that the claims fall within the scope of the Subcontract's arbitration clause.

Looking to the third step of the Court' inquiry, the Court concludes that no federal statute or policy renders the claim nonarbitrable. Accordingly, the Court will grant NAIAD's motion to compel arbitration.

**B. Motion to Dismiss**

NAIAD argues that this Court should dismiss rather than stay the case. The Court does not agree. In *Alfred v. Dean Witter Reynolds, Inc.*, the Fifth Circuit held that dismissal is appropriate "when all of the issues raised in the district court must be submitted to arbitration." 975 F.2d 1161, 1164 (5th Cir. 1992). Dismissal is within the discretion court's discretion and is not compulsory under those circumstances. *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003). As one district court stressed, *Alford* presented the court with unique circumstances and facts that made dismissal appropriate. *Bilyeu v. Johanson Berenson LLP*, No. 08-2006, 2010 WL 3808375, at *2 (W.D. La. Sept. 27, 2010) (Drell, J.). That district court stated:

> as a result of the straightforward nature of the dispute, the well-developed record, the on point Supreme Court precedent, and the frivolity of the Plaintiff's assertions, the Court in *Alford* was uniquely able to discern prior to the commencement of proceedings on the merits that *all* of the issues among all of the parties were subject to arbitration, and 'retaining jurisdiction ... [would] serve no purpose.'

*Id.* At least one of Bollinger's claims may not be arbitrable, specifically Bollinger's claims for liquidated damages, so the Court does not deem it appropriate to dismiss the case.

IV.     CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that NAIAD's Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay.  (Rec. Doc. 8) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** insofar as the Court orders arbitration, and this matter is hereby **STAYED** and **CLOSED** for administrative purposes pending such arbitration.  The motion is **DENIED** as to NAIAD's motion to dismiss the case.

New Orleans, Louisiana this 3rd day of June, 2015.

UNITED STATES DISTRICT JUDGE